```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

SCOTT NORTHROP,                   :
        Plaintiff,                :
V.                                :      PRISONER
                                  :      No. 3:04-CV-103(RNC)
CARUCCI, et al.,                  :
        Defendants.               :
```

## RULING AND ORDER

Plaintiff, a Connecticut inmate with ulcerative colitis, brings this action under 42 U.S.C. § 1983 against the Department of Correction ("DOC"), the University of Connecticut Health Center ("UConn"), and a number of state employees, alleging deliberate indifference to his serious medical needs in violation of the Eighth Amendment.[1] In addition, he presents claims for violations of his rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, et seq., as well as a claim for medical malpractice. Defendants have moved for summary judgment. [Doc. #67]. For the reasons that follow, the motion is granted as to the Eighth Amendment claims, but denied as to the ADA claims, and the court declines to exercise supplemental jurisdiction over the malpractice claim.

---

[1] The named defendants are the DOC, DOC Kitchen Supervisors Carucci, Robert DeVeau (incorrectly identified as Devoe), LaPlante, Mannette (incorrectly identified as Menette) and Ziemnicki, Richard Furey, Leslie Cutler, UConn and Dr. Silvis. All claims against defendant Cutler have been withdrawn. [Doc. #85 at 8].

Background

Plaintiff is an inmate at MacDougall Walker Correctional Institution ("MCI"). In May 2002, he was diagnosed with ulcerative colitis. Treatment of this disease generally focuses on preventing flare-ups and managing them when they occur.

At plaintiff's request, he has been placed on a "low residue" diet (i.e. reduced fiber diet) in accordance with standards set by the American Correctional Association, the American Dietetic Association and the University of Connecticut Food Service. The kitchen staff at MCI has been ordered to prepare a special diet tray for plaintiff at each meal. Plaintiff alleges that defendants LaPlante, Menette and Ziemnicki, all kitchen supervisors at MCI, have refused to prepare proper trays.

Plaintiff worked in the kitchen at MCI starting in approximately August 2001. In August 2003, he was reclassified and removed from this position. He alleges that he lost his position after he complained that he was not receiving a proper diet and his disease sometimes made him feel lightheaded. Plaintiff was not assigned another prison job until 2005.

In November 2003, plaintiff filed a habeas action in Connecticut Superior Court claiming deliberate indifference to his medical needs by DOC personnel in violation of the Eighth Amendment. Plaintiff alleged that he suffered from ulcerative colitis and sought injunctive relief to obtain a proper diet. The

2

case was tried over five days between October 2004 and February 2005. On February 25, 2005, the court found that DOC had created and made available to the plaintiff a nutritionally adequate and appropriate diet and dismissed the action. [See Doc. #67-4 Ex. 1].

In his complaint in this court, plaintiff alleges that the defendants failed to diagnose his ulcerative colitis in a timely manner, and have denied him the special diet he needs to manage his condition, in violation of the Eighth Amendment. In addition, he alleges that he lost his kitchen job because of discrimination and retaliation in violation of the ADA.

Standard of Review

Summary judgment may be granted only when there "is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(b). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In assessing the evidence, the Court must review the record as a whole, credit all evidence favoring the nonmovant, give the nonmovant the benefit of all reasonable inferences, and disregard all evidence favorable to the movant that a jury would not have to believe. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51 (2000).

Discussion

Eighth Amendment Claims

Defendants contend that the Eighth Amendment claims are barred by collateral estoppel because they were litigated in the prior case in Superior Court. Under Connecticut law,[2] collateral estoppel applies to issues that were fully and fairly litigated, and necessarily determined, in a prior proceeding involving the same parties. See DaCruz v. State Farm Fire & Cas. Co., 268 Conn. 675, 686 (2005)(describing the general doctrine of collateral estoppel); Aetna Cas. & Sur. Co. v. Jones, 220 Conn. 285, 304-306 (1991)(applying collateral estoppel when parties not completely mutual). The Superior Court specifically rejected plaintiff's deliberate indifference claim based on the defendants' alleged failure to provide him with a proper diet. Accordingly, I agree that this claim is barred.[3]

Plaintiff argues he did not have a full and fair opportunity to litigate his claim in the prior action because the court did

---

[2] In applying collateral estoppel, federal courts must give a state court judgment whatever preclusive effect the judgment would have under state law. See Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994) (applying New York law to collateral estoppel analysis of state habeas proceeding).

[3] Defendants argue that plaintiff's other claims are also barred because they were actually litigated too. But the Superior Court explicitly confined its consideration to plaintiff's claim of deliberate indifference to his medical need for a proper diet. [See Doc. #67-4 Ex. 3 at 129].

4

not have jurisdiction to award damages.  Connecticut law gives preclusive effect to a prior judgment regardless of the availability of a particular remedy in the first and second actions.  In McCarthy v. Warden, 213 Conn. 289, 297-98 (1989), for example, a state habeas petitioner's due process claims were precluded because he had previously litigated the same claims in federal court under § 1983, even though the federal court did not have jurisdiction to restore the petitioner's "good time credits" as relief for the alleged violation of the petitioner's due process rights.

Moreover, the transcript from the prior action shows that plaintiff had more than a full and fair opportunity to litigate his claim.  He examined multiple witnesses and adduced substantial testimony and documentary evidence covering the period from before his diagnosis with ulcerative colitis in May 2002 through the habeas court's final decision on February 25, 2005 (which was more than six months after plaintiff filed the amended complaint in this action).[4]  The evidence covered: plaintiff's medical condition; the diet he needed to control his condition; the diet he received; and defendants' continuing medical treatment of his condition.  Nearly all the individual

---

[4] The habeas trial was conducted on five dates: October 12, 2004, December 20, 2004, January 31, 2005, and February 8 and 25, 2005.  Plaintiff filed his first complaint in this action on January 20, 2004 and filed an amended complaint on August 16, 2004.

5

defendants in this action testified at the habeas trial.[5]
Plaintiff also extensively questioned an expert witness regarding his medical diagnosis and corresponding dietary needs. Numerous exhibits were admitted into evidence, including plaintiff's medical records, prison records pertaining to his diet and meals, and medical literature pertaining to his condition and dietary needs.

Plaintiff has not shown that the Superior Court made any procedural or evidentiary rulings that prejudiced him in any way. The court offered him guidance on the nature of the proceeding and how he should proceed and gave him considerable leeway in questioning witnesses.

After reviewing the record of the prior action, I conclude that plaintiff actually litigated his deliberate indifference claim to the extent it pertains to his diet, that the issues were necessary to the court's resolution of the claim on the merits, and that plaintiff had a full and fair opportunity to litigate the claim. Accordingly, defendant's motion for summary judgment on this claim is granted.

Failure to Diagnose Condition

Plaintiff claims that defendants were deliberately indifferent to his serious medical needs because they did not use

---

[5] Defendants Carucci, DeVeau, Furey, Mannette, Zieminicki, and Silvis testified at the habeas trial. Defendant Laplante did not testify.

all available resources at UConn to promptly diagnose his condition. [See Am. Compl. at ¶ 78]. More specifically, he alleges that he started to complain of symptoms as early as 1998, but was not diagnosed with ulcerative colitis until 2002. Defendants contend that these allegations fail to state a claim for deliberate indifference to a serious medical need, or alternatively that they are entitled to qualified immunity.

To prevail on this Eighth Amendment claim, plaintiff must prove that the defendants acted with "deliberate indifference to serious medical needs." See Estelle v. Gamble, 429 U.S. 97, 104 (1976). Deliberate indifference exists when an official knows that an inmate faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994); see also Harrison v. Barkley, 219 F.3d 132, 136-38 (2d Cir. 2000). This standard of culpability goes beyond mere negligence. See Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003)("[T]he Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law.").

On the record before the court, plaintiff cannot prove that the defendants were deliberately indifferent.[6] Plaintiff's

---

[6] The record contains over 800 pages of plaintiff's medical records. [Doc. #67-4 Ex. 11, Doc. #85 Ex. 5-7]. No motion to seal them has been filed. Courts ordinarily apply a strong presumption against sealing court records. See Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 95 (2d Cir. 2004) (judicial records may

medical records, which were submitted into evidence at the habeas proceeding, show the following. He complained of bloody stools and abdominal pain in July 1999, and complained of hemorrhoids in June 2001. [Doc. #67-4 Ex. 11 171, 212]. He reported abdominal pain and blood in his stools again in December 2001 and continued reporting the same problems over the next six months until he was ultimately diagnosed with ulcerative colitis in May 2002. [Doc. #67-4 Ex. 11 220, 270-75, 279-80, 285, 288, 294]. Prison medical staff examined plaintiff in June 2001 and multiple times in the six months before his final diagnosis. He was diagnosed with hemorrhoids during that time and was treated with prescriptions for Metamucil, Anusol suppositories, and occasional Sitz baths. [Doc. #67-4 Ex. 11 115, 327-335, 364, 378-381]. Prison medical staff took X-rays of his abdomen in January, February and May 2002, and performed blood tests in April 2002. [Doc. #67-4 Ex. 11 437-39, 443-49]. The records also show that plaintiff refused comprehensive blood tests on multiple occasions in February, March, and April 2002. [Doc. #67-4 Ex. 11 276-78, 282-84, 286-87].

Given this record, it is apparent that plaintiff's doctors

---

be sealed only when and to the extent necessary to preserve higher values). However, federal law treats medical records as confidential. See Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. 104-191 (1996). Therefore, plaintiff's medical records will be sealed by the Clerk. See L.R. 5(d)(3) (courts may seal judicial records sua sponte).

took affirmative steps to diagnose, monitor and treat his condition. More is not required by the Eighth Amendment. As the Court of Appeals has said, delays "in treatment based on a bad diagnosis or erroneous calculus of risks and costs, or a mistaken decision not to treat based on an erroneous view that the condition is benign," do not provide a basis for Eighth Amendment claims. See Harrison, 219 F.3d at 139. Accordingly, the motion for summary judgment is granted as to this claim.

ADA Claims

Title II of the ADA prohibits discrimination based on disability in services, programs or activities provided by a pubic entity. See 42 U.S.C. § 12132. Plaintiff alleges that he was discharged from his kitchen job and not provided a different job because of his disability, or alternatively that he was discharged because he complained that he was not receiving a proper diet. In support of his claim, he has submitted an inmate work evaluation form, signed by defendant Carucci, which states that plaintiff lost his job "because of his medical condition." [Doc. #85 Ex. 1].[7]

Defendants correctly state that plaintiff has no constitutionally protected right to a prison job absent state law mandating the provision of prison jobs or limiting the discretion

---

[7] Plaintiff's amended complaint does not specify that his ADA claims are brought under Title II. However, that appears to be the strongest possible claim in the circumstances.

9

of individuals empowered to assign prison jobs. See Gill v. Mooney, 824 F.2d 192, 194 (2d Cir. 1987); Santiago v. Comm'r of Corr., 39 Conn. App. 674, 680 (1995) (inmates have no property or liberty interest in prison employment). Under Title II of the ADA, however, prison officials may not discriminate against inmates on the basis of disability in administering work programs, or terminate an inmate's participation in a work program in retaliation for his exercise of constitutionally protected rights. See Gill, 824 F.2d at 194 (discretion is subject to constitutional requirements).[8] Accordingly, the Court denies summary judgment on the ADA claims.

Medical Malpractice

In the absence of diversity jurisdiction, the Court may exercise jurisdiction over plaintiff's malpractice claim only if it shares a "common nucleus of operative fact" with his ADA claims. See United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966); 28 U.S.C. § 1367(a) (permitting supplemental jurisdiction where the state law claim is "part of the same case or controversy" as the federal claim). This standard is not met. The ADA claims derive from the circumstances under which MCI

---

[8] States have no immunity from suit when a claim under Title II of the ADA alleges conduct that violates the Fourteenth Amendment. See United States v. Georgia, 126 S. Ct. 877, 882 (2006). Plaintiff's ADA claims satisfy this standard because he alleges discrimination in violation of his right to equal protection and retaliation for exercising his First Amendment rights.

kitchen supervisors reclassified plaintiff from his kitchen job in early 2003.  The medical malpractice claim derives from the prison doctors' continuing course of treatment related to plaintiff's ulcerative colitis, presumably starting as early as 1999.  The claims are alleged against different defendants, relate to substantially different conduct, and only tangentially overlap in time.  The only connection between the claims is that they involve the same medical condition.  Accordingly, the Court declines to exercise supplemental jurisdiction over the medical malpractice claim.

Conclusion

For the foregoing reasons, defendants' motion for summary judgment [doc. #67] is granted as to the § 1983 claims and denied as to ADA claims and the medical malpractice claim is dismissed without prejudice.

SO ORDERED this 5th day of March, 2007, at Hartford, Connecticut.

/s/
Robert N. Chatigny
United States District Judge